UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DILIGENT CORPORATION ET AL,

                            Plaintiffs,
      -against-

KUBERNO LIMITED ET AL

                            Defendants.

25-cv-1733 (ALC)

OPINION & ORDER

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs Diligent Corporation and Diligent Boardbooks Limited bring this action against Defendants Kuberno Limited, Kuberno US Inc., and Andrew Harker-Rigal alleging misappropriation of trade secrets under the federal Defend Trade Secrets Act and New York common law, unauthorized access of computer systems under the federal Computer Fraud and Abuse Act, and unfair competition under New York common law. Defendant Andrew Harker-Rigal moves for dismissal of Plaintiff's Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. ECF No. 25. Harker Rigal also joins Defendants Kuberno Limited and Kuberno US Inc. in moving for dismissal of Plaintiff's Complaint pursuant to the doctrine of *forum non conveniens* and Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 29. After careful review, Defendant Harker-Rigal's motion is **GRANTED.** Defendants Kuberno Limited and Kuberno US Inc.'s motion is **GRANTED in part**.

BACKGROUND

I.    **Factual Background**

Plaintiffs Diligent Corporation is a company in the corporate governance software industry. Complaint ("Compl.") ¶ 31. Diligent Corporation's principal place of business is New York, New

1

York. *Id.* ¶ 13.   Plaintiff Diligent Boardbooks Limited is the U.K. subsidiary of Diligent Corporation. *Id.* ¶ 15. Plaintiffs have a product known as Diligent Entities. *Id.* ¶ 9.

Defendant Harker-Rigal is a former Regional Sales Director of Diligent Boardbooks Limited, where he worked from 2017 to 2021.  *Id.* ¶¶ 5, 45. Harker-Rigal was living in the U.K, at the time this suit was filed. *Id.* ¶ 18. In October 2025, Harker-Rigal relocated to Tacoma, Washington. ECF No. 43.

Defendant Kuberno Limited is a U.K. company founded in 2020. *Id.* ¶¶ 4, 16. Kuberno develops and sells a software product branded as Kube that purports to help organizations manage their various legal entities. *Id.*  Kuberno competes directly in the same space as Plaintiffs. *Id.* In 2022, Kuberno Limited hired Harker-Rigal as its new Sales Director. *Id.* ¶ 5. Defendant Kuberno U.S. Inc. was incorporated in Delaware in 2024. *Id.* ¶ 17.

From 2022 to 2024, Harker-Rigal allegedly downloaded and accessed information from Diligent Corporation's servers located in the United States  *Id.* ¶¶ 6-10. The servers are located in New Jersey and Colorado. Declaration of Neil Barlow ("Barlow Decl.") ¶ 12. Harker-Rigal's employment with Kuberno Limited ended in January 2025. Declaration of Harker-Rigal ¶ 21.

## II.    Procedural History

Plaintiffs filed their Complaint on February 28, 2025. ECF No. 1. On June 27, 2025, Defendants filed their Motions to Dismiss. ECF Nos. 25, 29. On July 18, 2025, Plaintiffs filed their Oppositions. ECF Nos. 34, 36. On August 1, 2025, Defendants filed their Replies. ECF Nos. 39, 40.

On October 17, 2025, Defendant Harker-Rigal filed a letter indicating that he was moving from the United Kingdom to the United States, specifically Tacoma, Washington. ECF No. 43. On October 19, 2025, the Court ordered the Parties to indicate whether this new fact required

supplemental briefing with regard to the Motions to Dismiss. ECF No. 44. On November 5, 2025, the Parties filed their responses to the Court's October 19, 2025 Order. ECF Nos. 52, 53, 54.

## STANDARD OF REVIEW

### Rule 12(b)(2)

Rule 12(b)(2) mandates dismissal of an action against any defendant over whom a Court lacks personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  A plaintiff opposing a Rule 12(b)(2) motion "bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Gr. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citation omitted).  A civil plaintiff must therefore plead sufficient facts establishing "a *prima facie* showing" that personal jurisdiction exists.  *Grand River Enters. Six Nations, Ltd. V. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005) (citation omitted).  This *prima facie* showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks and citation omitted).  This averment must provide "factual specificity necessary to confer jurisdiction" as mere "conclusory statements" are insufficient.  *Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998).  What's more, a reviewing Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citation omitted).

A Court reviewing a 12(b)(2) motion "may consider documents beyond the pleadings in determining whether personal jurisdiction exists." *Greatship (Ind) Ltd. v. Marine Logistics Sols. (Marsol) LLC*, 2012 U.S. Dist. LEXIS 8231, at *5 (S.D.N.Y. Jan. 24, 2012) (citation omitted). Personal jurisdiction must also be established "with respect to each claim asserted." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).

3

### *Forum Non Conveniens*

Courts in this Circuit apply a three-step process to determine whether dismissal on *forum non conveniens* grounds is warranted:

"At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum.  At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute.  Finally, at step three, a court balances the private and public interests implicated in the choice of forum." *Norex Petroleum Ltd. v. Access Industries, Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (internal citations omitted).

### **Rule 12(b)(6)**

When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citations omitted).  Thus, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

**DISCUSSION**

**I.    The Court Does Not Have Personal Jurisdiction Over Defendant Andrew Harker-Rigal**

**A.  General Jurisdiction**

"[F]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011). "Personal jurisdiction is determined at the time of service of the summons and complaint." *Prince v. Intercept*, 634 F. Supp. 3d 114, 128 (S.D.N.Y. 2022). At the time this complaint was filed, Defendant Harker-Rigal was domiciled in the U.K., not New York, or even the U.S. Therefore, the Court does not find general jurisdiction over Harker-Rigal.

**B.  Specific Jurisdiction**

Under New York's long-arm statute, § 302, a plaintiff can assert personal jurisdiction over a non-domiciliary who (1) transacts business in New York, (2) commits a tortious act (except defamation) in New York, (3) commits a tortious act (except defamation) outside of New York that causes injury within New York, or (4) owns, uses, or possesses real property in New York. The exercise of specific jurisdiction must comport with due process, so a court will analyze whether a defendant has sufficient minimum contacts with the forum state and whether jurisdiction comports with "traditional notions of fair play and substantial justice." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (quoting *Daimler AG v.Bauman*, 571 U.S. 117, 126, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)).

**1.  Statutory Analysis**

Plaintiffs assert that there is specific jurisdiction pursuant to 302(a)(3), which requires that

 (1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce.

*Sony Music Ent. v. Univ. of S. California*, No. 1:25-CV-2042-GHW, 2026 WL 96694, at *6 (S.D.N.Y. Jan. 13, 2026) (internal citations omitted).

Plaintiffs allege that Defendant Harker-Rigal misappropriated trade secrets and had unauthorized access to Diligent Corporation's servers outside of New York, which caused injury to Diligent Corporation in New York. Compl. ¶ 22. Plaintiffs allege that the consequences in New York were reasonably foreseeable to Harker-Rigal because he was a former employee of Plaintiffs and knew they were headquartered in New York. Moreover, Plaintiffs claim Harker-Rigal knew the Terms of Use for Diligent Entities' website, which states that it is "governed by the law of the State of New York" and that users "agree to the exclusive jurisdiction of the courts located within the state of New York." *Id*. ¶ 24.

Defendants argue that Harker-Rigal did not cause Plaintiffs injury in New York, does not have an active interest in interstate or international commerce, and does not have reasonable expectation that his conduct could have consequences in New York. Defendant Andrew Harker-Rigal's Motion to Dismiss ("Harker-Rigal Mot.") at 11.

### a) Harker-Rigal Did Not Cause an Injury in New York

"The suffering of economic damages in New York is insufficient, alone, to establish a direct injury in New York for [CPLR] 302(a)(3) purposes." *Troma Entertainment, Inc. v. Centennial Pictures Inc*., 729 F.3d 215, 218 (2d Cir. 2013) (interna quotations omitted). A court must apply the situs-of-injury test where it looks to the original event that caused injury. *See DiStefano v. Carozzi North America, Inc*., 286 F.3d 81, 84 (2d Cir. 2001).  "The key question in this analysis is the timing and location of the initial injury, as distinct both from the tortious act

itself and from the damages suffered later[.]" *Doe v. Delaware State Police*, 939 F. Supp.2d 313, 327 (S.D.N.Y. 2013).

Here, Plaintiffs allege that "Harker, on behalf of Kuberno and in his role as Kuberno's Sales Director, began to systematically, intentionally, knowingly, and without authorization, access confidential and secured computer servers located in the United States, and owned by Diligent Corporation in New York." Compl. ¶ 6. However, Diligent Corporation's servers were not located in New York but rather Colorado and New Jersey. Barlow Decl. ¶ 12. The Court does not find that Plaintiffs have alleged enough facts to show that Harker-Rigal caused injury in New York.

### b) Harker-Rigal Could Not Foresee Consequences in New York

Even if the Court found that Harker-Rigal's actions caused injury in New York, Harker-Rigal could not have foreseen the consequences of actions he was taking in the U.K., while only working for Plaintiffs' U.K. subsidiary, and later for a U.K company. Under 302(a)(3), a plaintiff must show "the defendant expected or should reasonably have expected the act to have consequences in New York." "An objective—and not a subjective test—governs whether a defendant expects or should expect his act to have consequences within New York." *Int'l Biometric Grp., LLC v. Intrepid Sols. & Servs., Inc.,* No. 12 CIV. 4029 ALC, 2012 WL 2369501, at *3 (S.D.N.Y. June 21, 2012). Plaintiffs cite to paragraphs 11, 21, and 23 as well as the paragraphs 3, 5, and 6 of the Barlow Declaration to support their position that Harker-Rigal should have reasonably expected his actions to have consequences in New York. Plaintiff's Opposition to Defendant Andrew Harker-Rigal's Motion to Dismiss ("Pl. Opp."), at 12. However, none of these citations support their position. In the Complaint, Plaintiffs only discuss Kuberno and Kuberno US. The Barlow Declaration states that Harker-Rigal "interacted with

Diligent Corporation's New York-based sales team" and that "at least once…[he] asked for permission to fly to New York to assist with closing a deal with the American arm of an *existing British client*." Barlow Decl. ¶¶ 5, 6 (emphasis added). Plaintiffs do not specify that the client was based in New York. As *Int'l Biometric Grp., LLC* holds, it is not enough for a defendant to be aware that a plaintiff's headquarters are in New York to confer personal jurisdiction. No. 12 CIV. 4029 ALC, 2012 WL 2369501, at *4 (S.D.N.Y. June 21, 2012). Therefore, the Court does not find that Plaintiffs have satisfied 302(a)(3)'s requirement that Harker-Rigal should have reasonably expected to face consequences in New York.

Because Plaintiffs have not satisfied two of the elements under 302(a)(3), the Court will not analyze Due Process. Defendant Harker-Rigal's 12(b)(2) motion is GRANTED without prejudice.

## II.    The Doctrine of Forum Non Conveniens Warrants Dismissal

Pursuant to the doctrine of forum non conveniens, a court can "dismiss an action [when] a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007).

### A.  Degree to Deference to Plaintiffs' Choice of Forum

When analyzing the first factor in the Second Circuit's test, courts find a "strong presumption in favor of the plaintiff's choice of forum." *Norex Petroleum Ltd. v. Access Industries, Inc.*, 416 F.3d 146, 153, 154 (2d Cir. 2005) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

> At one end, the greater the plaintiff's or the lawsuit's connection to the United States and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the greater the deference afforded. At the other end, the more the plaintiff's choice of the United States forum appears to have been motivated by forum-

8

shopping reasons—such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum, the less the deference afforded.

Great Bowery Inc. v. Valnet, Inc., No. 1:25-CV-1236-GHW, 2025 WL 3268975, at *5 (S.D.N.Y. Nov. 23, 2025) (internal citation omitted).

Additionally, courts will examine "the availability of witnesses or evidence in the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." *Wamai v. Indus. Bank of Korea*, No. 21 Civ. 1956, 2023 WL 2395675 (2d Cir. Mar. 8, 2023).

Defendants contend that prior to filing this lawsuit, Plaintiff Diligent Boardbooks Limited ("DBL") had first threatened legal action in the U.K. *See* Declaration of Antony Russel Craggs ("Craggs Decl."), Exhibit B ("Ex. B"). In an April 22, 2024 letter sent "in accordance with the Practice Direction on Pre-Action Conduct and Protocols (the 'Pre-action PD') contained in the English Civil Procedure Rules," DBL argued that Defendant Harker-Rigal "possesses Confidential Information (as defined in Mr Harker-Rigal's Diligent employment contract) and Proprietary Material (as defined below) which he and/or Kuberno have misused, and/or are continuing to misuse." *Id*. ¶¶ 2, 3. Specifically, Plaintiff DBL asserted that from October 2021 to March 2024, Harker-Rigal accessed Diligent Entities' "demo site" using his historic credentials from when he was previously employed at DBL. *Id*. ¶ 12. Defendants point out that the April 2024 letter alleged English causes of action and did not reference misappropriation of trade secrets. Defendants Kuberno Limited and Kuberno US Inc.'s Motion to Dismiss ("Kuberno MTD") at 5-6. Kuberno Limited retained U.K. counsel and went back and forth with DBL via letters. *Id.* at 6-7. After Kuberno Limited sent a letter in July 2025, it did not hear back from

Plaintiffs until the February 2025 Complaint in this Court. Plaintiffs never filed any legal actions in the U.K. *Id*. at 8.

Defendants argue that it is more convenient for Plaintiff DBL to litigate the dispute in the U.K. because DBL is based in the U.K. and that is where the allegations took place. Defendants also argue that Plaintiffs added Diligent Corporation, which is headquartered in New York, in order to forum shop. *Id.* at 11. Defendants state that Harker-Rigal's employment agreement contains a mandatory forum selection clause that requires breach of contract claims to be brought in the U.K. *Id*. at 13. Notably, Plaintiffs did not bring breach of contract claims.

Plaintiffs continue to assert that the misappropriation of trade secrets and unfair competition took place in New York. However, the Court finds that the lack of detail about the New York clients allegedly impacted and the fact that the servers Harker-Rigal accessed were not located in New York undermine Plaintiffs' position. Moreover, based on the Complaint, the bulk of the allegations concern the U.K.-based Plaintiff, DBL, not New York-based Plaintiff, Diligent Corporation.

With regard to witness and evidence availability, the Court finds that the U.K. and the U.S. to be on the same playing field in this case, though it remains difficult to ascertain what evidence and witnesses will have direct information who are based in New York. Defendants have stated they are amenable to suit in the U.K. Kuberno MTD at 14. Plaintiffs and Defendants both had counsel, as indicated by the 2024 letter correspondence, in the U.K.

Given that DBL appears more involved in the Complaint as it's currently written, that Defendants are amenable to suit in the U.K., and that both Parties have access to counsel in the U.K., the factors tip in favor of less deference for Plaintiffs' choice of forum.

**B. Adequacy of the Alternative Forum**

"An alternative forum is adequate [1] if the defendants are amenable to service of process there, and [2] if it permits litigation of the subject matter of the dispute." *Aenergy, S.A. v. Rep. of Ang.*, 31 F.4th 119, 130 (2d Cir. 2022). "Ordinarily, the requirement of an adequate alternative forum will be satisfied when the defendant is amenable to process in the other jurisdiction. In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative." *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 476-77 (2d Cir. 2002). "Defendants bear the burden of establishing that an adequate alternative forum exists." *Marchante v. Reuters Am. LLC*, 736 F. Supp. 3d 209, 218 (S.D.N.Y. 2024).

Plaintiffs contend that even though Kuberno U.S. states it would accept service in the U.K., that an English court may not exercise jurisdiction over it. Plaintiffs liken this situation to *Amimon Inc. v. Shenzhen Hollyland Tech Co.,* a case where the Court found only one of the two defendants would likely be subject to the foreign country's jurisdiction. No. 20 CIV. 9170 (ER), 2021 WL 5605258 (S.D.N.Y. Nov. 30, 2021). However, at issue in *Amimon Inc.* was a Chinese court and defendants in that case did not provide affirmative statements or details about how they knew foreign jurisdiction would be applicable. Here, in viewing Antony Craggs' Declaration, the Court finds that an English court will likely be able to exercise jurisdiction over Kuberno U.S. ECF No. 42 ¶¶ 14-15.

The next question for the Court to address is whether the remedy offered by the U.K. is clearly unsatisfactory. Defendants allege that Plaintiffs forum-shopped specifically because they did not want to bring breach of contract, which would have forced them into U.K. court, and instead brought claims here under the Defend Trade Secrets Act, the Computer Fraud and Abuse

Act, and New York common law. Plaintiffs argue they brought these claims because the U.K.

may not be able to offer comparable relief. However, Plaintiffs do not offer any evidence in

support of this. It is true that the U.K. does not have a single law addressing misusing computers,

but instead the U.K. has a "patchwork of data protection, cybersecurity, privacy and national

security laws and legislations that *varyingly apply* to specific organisations, specific sectors or to

all business generally." ECF No. 30 ¶ 66. "The putative alternative forum is not required to

adequately address U.S.-specific law, but instead must only cover the essential subject matter of

the dispute". *Marchante v. Reuters Am. LLC*, 736 F. Supp. 3d 209, 218 (S.D.N.Y. 2024) (internal

citations and quotations omitted). Therefore, it is not necessary that the causes of action that

could be brought in the U.S. be identical to those in the U.K. As Defendants point out, Plaintiffs

can obtain monetary damages and injunctive relief for claims alleging misuse of confidential

information and computers in the U.K. Kuberno MTD, 15. The Court finds that Defendants have

made out their burden with respect to adequacy of the U.K. as a forum.

### C.  Private and Public Interest Factors

The final step in analyzing whether dismissal pursuant to *forum non conveniens* is

warranted involves weighing a set of private and public interest factors out laid out by the

Supreme Court. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

> The private factors to be considered are (1) the relative ease of access to sources of proof; (2) the convenience of willing witnesses; (3) the availability of compulsory process for attaining the attendance of unwilling witnesses; and (4) the other practical problems that make trial easy, expeditious, and inexpensive. The public interest factors are: (1) court congestion; (2) avoiding difficult problems in conflict of laws and the application of foreign law; (3) the unfairness of imposing jury duty on a community with no relation to the case; and (4) the interest of communities in having local disputes decided at home.

*Olin Holdings Ltd. v. State of Libya*, 73 F.4th 92, 109-10 (2d Cir. 2023).

### 1) Private Interest Factors

While there remains some dispute about where the majority of witnesses and evidence are, the Court finds that overall private interest factors (1) and (2) weigh in favor of Defendants. The allegations clearly took place while Defendant Harker-Rigal was in the U.K. working at a U.K. company, which means it will be more convenient to litigate in the U.K. As for the claim from Defendants that some witnesses may be unwilling to testify in the U.S. and not subject to the Court's subpoena power, this is too speculative for the Court to consider at this time. The Court finds (3) to be neutral. Factor (4), which examines other practical problems, also appears neutral. Defendants argue that they are concerned about inconsistent judgments if Plaintiffs were to also bring a parallel U.K. lawsuit. Because this has yet to happen, the Court does not find it appropriate to consider this yet.

### 2) Public Interest Factors

This Court is very busy. However, Plaintiffs are correct in asserting that it is unclear whether the Southern District of New York is any busier than a U.K. court. Thus, the Court finds the public interest factor (1) regarding court congestion neutral. The Court does see a potential issue interpreting Harker-Rigal's employment contract, given that it may be governed by English law as Defendants claim. Kuberno MTD at 4. Public interest factor (2) weighs in favor of Defendants because Harker-Rigal's activities under the employment contract will be relevant to his and Kuberno's liability. The Court is particularly loath to apply foreign law. *Cofine, S.A.P.I. de C.V., SOFOM E.N.R. v. McNish*, No. 3:25-CV-00475 (SVN), 2026 WL 352448, at *9 (D. Conn. Feb. 9, 2026) (finding that a potential conflict of law weighed strongly in favor of dismissal). Additionally, the factors that weigh imposing a community to jury duty with no relation to the case and local interest tip the scale in favor of Defendants. The allegations

primarily involve U.K. companies who have U.S. *subsidiaries*, one of which was only incorporated in 2024. Additionally, as already detailed in analyzing Defendant Harker-Rigal's 12(b)(2) motion, the connection to New York is not obvious. For these reasons, the Court finds the public interest factors weigh in favor of Defendants.

Overall, examining the two private interest factors in favor of Defendants and the majority of the public interest factors in favor of Defendants, the Court holds that Defendants have successfully carried their burden in pursuing dismissal under *forum non conveniens*. Therefore, the Court declines to consider Defendants' 12(b)(6) arguments and denies this motion without prejudice.

## CONCLUSION

For the foregoing reasons, Defendant Harker-Rigal's motion to dismiss pursuant to 12(b)(2) is GRANTED. The Clerk of Court is respectfully directed to terminate ECF No. 24.

Defendants' *forum non conveniens* motion is GRANTED without prejudice. The Clerk of Court is respectfully directed to terminate ECF No. 28.

**SO ORDERED.**

**Dated: March 26, 2026**
**New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**

14